## WILLIAM PANTON

### v.

### CORNELIA J. MANLEY ET AL.

1. INJUNCTION—EQUITY JURISDICTION.—A Court of equity will restrain one person from obtaining possession of the land of another by means of process growing out of litigation to which the possessor of the land was not a party.

2. HOMESTEAD—RELEASE.—In order to a release of the homestead, there must be, both in the body of the deed and in the acknowledgment, a clause waiving the right of homestead, and the wife must join with the husband in executing the deed; and where the wife does not join with her husband in the deed, the homestead is not released as to either of them.

3. ABANDONMENT.—The Court examines the evidence, and is of opinion that it fails to show an abandonment of the homestead by the husband.

Panton v. Manley.

Whether the husband can abandon the homestead, or surrender possession, as against the wife while she is inmate of an insane asylum, the Court does not determine.

APPEAL from the Circuit Court of Kane county; the Hon. H. H. CODY, Judge, presiding.  Opinion filed July 16, 1879.

Mr. JAMES COLEMAN and Mr. D. B. SHERWOOD, for appellant; contending that there was no abandonment of the homestead, cited Cipperly v. Rhodes, 53 Ill. 346; Wiggins v. Chance, 54 Ill. 175; Potts v. Davenport, 79 Ill. 455.

A lease signed by appellant would not debar him from asserting his homestead right: Buck v. Conlogue, 49 Ill. 391; Booker v. Anderson, 35 Ill. 66.

The wife cannot maintain a suit in her own name while her husband is living and has not deserted her: Getzler v. Saroni, 18 Ill. 511; Phillips v. City of Springfield, 39 Ill. 83.

Having a wife, appellant is the head of a family: Kitchell v. Burgwin, 21 Ill. 40.

By answering over, appellee has waived her right to insist that the bill should have been dismissed on demurrer: People v. Core, 85 Ill. 248.

A judgment in forcible detainer against a tenant does not affect the landlord who was not a party: Leindecker v. Waldron, 52 Ill. 283; Goodnough v. Sheppard, 28 Ill. 81.

Upon the rule as to solicitors' fees: Jevne v. Osgood, 57 Ill. 340.

The deed was not signed and acknowledged by the wife, and therefore did not convey the homestead: Rev. Stat. chap. 27, § 30; Vanzant v. Vanzant, 23 Ill. 536; Patterson v. King, 29 Ill. 514; Boyd v. Cudderback, 31 Ill. 113; Smith v. Miller, 31 Ill. 157; Pardee v. Lindley, 31 Ill. 174; Black v. Lusk, 69 Ill. 70; Richards v. Greene, 73 Ill. 54; Best v. Gohlson, 11 Chicago Legal News, 177; Eldridge v. Pierce, 11 Chicago Legal News, 201; Warren v. Crosby, 11 Chicago Legal News, 224.

Messrs. BOTSFORD, BARRY & RUSSELL, for appellees; argued that the wife during the lifetime of her husband, can assert her homestead right, and cited Mix v. King, 55 Ill. 434; Allen v. Hawley, 66 Ill. 164.

There was an abandonment and surrender of the premises: Brown v. Coon, 36 Ill. 243; Wright v. Dunning, 36 Ill. 438; Buck v. Conlogue, 43 Ill. 232.

LACEY, J. On the 24th day of January, A. D. 1873, the appellant, while his wife Jane Ann Panton was insane, and in the insane asylum at Elgin, executed his mortgage, conveying the premises, house and several lots, situated in Clintonville, in Kane county, described in the bill to Joseph P. Corran, the father of the appellee, Manley, to secure $2,000, the wife of appellant not joining in the mortgage.

At the time this mortgage was executed, and some time before the wife of appellant was insane, the premises in question had been, and were, occupied as a homestead by appellant and his wife, when his wife was not in the asylum, and by complainant all the time his wife was in the insane asylum.

Afterwards, this mortgage was assigned by Corran to his daughter, Cornelia J. Manley. Afterwards, the debt not being paid, appellee, Manley being about to advertise and sell the premises under the mortgage, entered into an agreement with appellant and V. W. Panton, who occupied the premises with his father and his own family, his father residing with him, and keeping his furniture there, to the effect that the appellant should execute to appellee, Manley, a deed waiving the right of homestead, and should deliver up possession of the house and lots to appellee, Manley, in which case the appellee, Manley, was then to cancel the mortgage and deliver to appellant the notes. V. W. Panton was to attorn to appellee, Manley, and take a written lease from her.

On the 20th day of April, A. D. 1876, the husband of appellee, Manley, and appellant met at the office of Wing, an attorney at law, for the purpose of having the deed executed, the mortgage and notes delivered to appellant, and the possession of the premises delivered to appellee, Manley, by appellant and V. W. Panton.

The deed was executed and delivered by appellant, waiving the homestead in the body thereof, but not in the acknowledgment, nor was it signed by the wife of appellant, who was still in the insane asylum.

Appellant also assigned his insurance policy on the house to appellee, Manley.   Then under the promise that V. W. Panton execute the lease, and appellant himself would deliver up pos-session and attorn to appellee; appellee, by her agent, delivered the notes and mortgage to appellant.   Appellee's husband then went to see V. W. Panton, who was not present, to get him to sign the lease, but when he saw him, V. W. Panton refused to sign the lease, or give possession of the land, and claimed the right to hold it for his mother, she having a homestead right therein.

On the 29th April, 1876, appellee, C. J. Manley, commenced a suit of forcible detainer before a justice, against V. W. Panton, to obtain possession of the premises.

The justice gave judgment for the possession of the premises.   Upon appeal to the Circuit Court, by V. W. Panton, on March 8, 1877, the appeal was dismissed for want of prosecution.

On the 9th of same month, motion to reinstate the cause was overruled, and upon appeal to Supreme Court, the decision of the court below was affirmed.

The appellee, Cornelia J. Manley, being about to obtain possession of the premises by a writ against V. W. Panton, appellant, on the 24th day of April, A. D. 1879, filed his bill in the Circuit Court of Kane county, against appellee, Manley, and V. W. Panton, claiming his right of homestead, and asking it to be assigned to him, and that the rent payable from V. W. Panton to appellee, by virtue of the appeal bond in the detainer case, be ascertained on a basis of $1,000, and paid to him.

Upon answer and affidavits filed, the court below dismissed the bill and rendered decree for damages on the injunction bond.

From that decree the appellant appeals to this court and assigns for error, among other matters, that the court below erred in dismissing the bill and rendering the decree.

It is claimed by appellee, Manley, that equity has no jurisdiction in the case ; that, as V. W. Panton was the tenant of appellant, there was privity of possession and that both parties claimed under the same source.

The principle laid down in the case of Goodnough v. Sheppard, 28 Ill. 81, in which it was held that equity would restrain one man from obtaining possession of land by means of process growing out of litigation to which the possessor of the land was not a party, it is insisted does not apply. We think the principle announced in that case is applicable in this. In this case V. W. Panton held under the complainant, the complainant not under him. A landlord cannot be said to hold under his tenant.

In this case V. W. Panton, who was a defendant in the detainer suit, through neglect, did not prosecute his appeal, and did not in the Circuit Court set up and insist on his right to hold the homestead as tenant of the homesteader.

In an action of ejectment a judgment against the tenant, of which the landlord had no notice, no more bound the landlord than would a judgment in any other legal proceeding to which he was no party. Lowe v. Emerson, 48 Ill. 160 ; Oetgen v. Ross, 47 Ill. 142.

Appellant was neither party nor privy to the action of detainer and has a right to maintain this action.

It is claimed, first, that the conveyance by appellant to appellee, Manley, of 20th April, 1876, under the circumstances was operative to convey appellant's estate of homestead, and secondly, that if the title was not conveyed at that time, including the homestead, that appellant afterwards abandoned the house and lots as a homestead in pursuance of the deed and that the appellee thereby became the owner of the premises in fee discharged of the appellant's right of homestead.

The statute in force at the time of this conveyance—statute 1874, page 497, Sec. 4—provides that "No release, waiver or conveyance of the estate (homestead) so exempted, shall be valid, unless the same is in writing, subscribed by said householder and his or her wife or husband, if he or she has one, and acknowledged in the same manner as conveyances of real estate are required to be acknowledged, or possession is abandoned or given pursuant to the conveyance," etc.

By the Conveyance Act, it is required that there shall be contained in the body of the deed a clause waiving the right of

homestead, and that a similar clause shall be contained in the acknowledgment of both husband and wife—Statute 1874, Secs. 11 and 27—and no release of the husband shall bind the wife unless she join in such release or waiver.   Neither in the mortgage given Corran, nor the deed, did the wife join.

By the construction given to these enactments by the Supreme Court, in the case of Richards `v. Greene, 73 Ill. 54, the husband could not release his own right of homestead unless his wife join in the deed in the manner required by the statute.

Hence, neither the deed nor mortgage could convey the appellant's right of homestead.   In the case of the deed there was no clause in the acknowledgment of appellant waiving his right of homestead.   But was the estate of homestead of appellant, at the time he executed the deed, released or waived by his abandoning or giving possession pursuant to the deed of his homestead.

We have examined carefully the bill and answers, and also the affidavits filed on the motion to dissolve the injunction, and we find no evidence that appellant abandoned or gave possession at the time of the conveyance or in pursuance of it. At the time he executed the deed he held possession by having his goods in the house, and by his son, V. W. Panton, who was tenant of appellant, and occupied it with his family, together with appellant.   V. W. Panton absolutely refused to give up possession, claiming to hold it as the homestead of his mother, wife of appellant, who being insane could not nor did not give up possession.

It is true appellant promised to give possession, but a promise is not equivalent to the act itself, and does not fill the requirements of the statute.

Again, the home of his wife was in that house and on those premises, though she was herself in the insane asylum at Elgin.

Could possession be given up or abandoned pursuant to the conveyance of the husband alone, without the consent of his wife?

Statute 1874, page 578, Sec. 16, provides "That neither the husband nor wife can remove the other from the homestead

without the consent of the other, unless the owner of the property shall in good faith provide another homestead suitable to the condition in life of the family." If the conveyance be made wholly by deed, it requires the acknowledgment and release of the homestead of the wife before it can be operative, even as to the husband. It would seem that if the conveyance is to be helped out according to the provisions of the statute, by abandonment of possession in case the husband has not abandoned the wife, then, on principle, the wife's consent to such abandonment should be obtained, in order in like manner to convey the homestead of the husband, even though he abandon it.

However, as the question is not necessarily involved in this case, as we hold the evidence to be, we refrain from deciding that question.

The statute of 1874, page 578, provides a mode by which the homestead of an insane married woman may be conveyed. It is required to apply to a court of equity for leave to have the conveyance made, and which must be executed by some discreet person appointed by the court. This was not done in this case, nor attempted to be done.

It is contended by counsel for appellee, that in pursuance of the original agreement to execute the deed and deliver possession of the house and lots, in April, 1878, and about two years after the forcible detainer, suit was commenced, appellant moved his furniture out of the house, went to Iowa to reside with his daughter, and abandoned possession, and presumably thereby perfected his conveyance.

It cannot be justly claimed, from the evidence, that at the time appellant executed the deed in question to appellee he delivered possession; because, from that time until he went to Iowa in spring of 1878, he lived in the house with his son on the lots in question, and kept his household goods there. He did not give up or abandon possession prior to that date in pursuance of the deed. Then, did he afterwards abandon possession, intending that such abandonment should have reference to his deed and complete the conveyance?

There is no evidence that appellant, after the suit was

Panton v. Manley.

commenced in April, 1876, ever said or did anything more about giving possession to appellee.   The affidavits of appellant himself, and also of V. W. Panton, clearly show that appellant, at the time he went to Iowa, April, 1878, had no intention of abandoning his homestead; nor did he, on his return in August, 1878, or on his second return to Iowa in Oct., 1878, have any intention whatever of abandoning his homestead, but intended, and all the time intended, to claim his homestead in the premises; and never at any time had abandoned it, or intended so to do.

It is true that Victor Peterson makes affidavit that at the time appellant went to Iowa, he got affiant to haul his household goods to the depot, and told affiant that he was going to live or stay with his daughter in Iowa; but V. W. Panton says that the household goods spoken of were those of appellant's daughter, and not appellant's—or very few of them.   That appellant's goods all the time remained in the house, consisting of beds, bedding, bureaus and stoves, etc.   The evidence is insufficient from which to find that there was an intended abandonment on the part of appellant within the principle of the law as laid down in Cipperly v. Rhodes, 53 Ill. 346; Wiggins v. Chance, 54 Ill. 175; Potts v. Davenport, 79 Ill. 455.

If it be contended that although the claimed giving-up or abandoning of possession of the homestead were not done with any reference to the deed, yet it was nevertheless an abandonment, the evidence would still be too weak to establish such claim.

We cannot find, from the evidence in the case, that there was an abandonment in any sense—either as a necessary part of the conveyance or otherwise—and find that appellant can claim his homestead.

The decree of the court below is therefore reversed and the cause remanded.

Reversed and remanded.