In re Melvin Archie **WINEGARTEN, SSN 554–32–9476,** Katherine Winegarten, **SSN 427–58–0502, Debtors.**

**Bankruptcy No. 88–01255.**

United States Bankruptcy Court, E.D. Oklahoma.

April 14, 1989.

Warren McConnico, Tulsa, Okl., for debtors.

A. Craig Abrahamson, Tulsa, Okl., for Wells Fargo Credit Corp.

Kenneth Mather, Tulsa, Okl., Chapter 7 Trustee.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On February 13, 1989, Debtors' Motion for Avoidance of a Judicial Lien pursuant to 11 U.S.C. § 522(f)(1), with an accompanying Response by Wells Fargo Credit Corporation, and Trustee's Objection to Exemption, with accompanying Response by Wells Fargo Credit Corporation came before this Court for Trial. A consolidated hearing was conducted for the taking of evidence to resolve both matters. Appearances were entered by Warren McConnico, attorney for the Debtors, A. Craig Abrahamson, representing Wells Fargo Credit Corporation, and Kenneth Mather, the duly appointed Chapter 7 Trustee.

At the conclusion of the taking of evidence, the Court afforded counsel for the three parties represented at the hearing the opportunity to submit proposed Findings of Fact and Conclusions of Law in support of their respective positions presented at Trial. All such pleadings were timely received by this Court.

After review and consideration of the evidence presented at Trial, the pleadings, and the applicable law in the area, this Court makes the following Findings of Fact in this core proceeding:

STATEMENT OF ISSUE—At issue in this case is whether the Debtors have demonstrated sufficient intent and actions to allow a homestead exemption to be claimed on certain real property owned by the Debtors.

1. On October 24, 1988, the Debtors in this matter filed for Chapter 7 relief under the United States Bankruptcy Code claiming a homestead exemption on certain real property, described as:

The Northeast Quarter of the Southeast Quarter of the Southwest Quarter (NE/4 SE/4 SW/4) and the West Half of the Southwest Quarter (W/2 SW/4) and the West four (4) acres of the West Half of the Southeast Quarter of the Southwest Quarter (W/2 SE/4 SW/4), Section Thirteen (13), Township Five (5) North, Range Twenty-two (22) East, LeFlore County, OK

This property consists of some 94 acres, 84 acres of which is contiguous and 10 acres of which is separated by 16 noncontiguous acres owned by the Debtor's father, Andrew Winegarten.

2. A house is located on the property which is bisected by the property boundary line between the 84 contiguous acres and the 16 acres owned by the Debtor's father. Testimony revealed that 90 percent of the home is located on the Debtors' property and the remaining 10 percent is located on the property owned by the Debtor's father. Also located on the property are two other structures: a "bunkhouse," generally regarded as uninhabitable, and the frame-

work for a pole barn which is not completed. Both of these structures are located on the 84 contiguous acres owned by the Debtors.

3. The house was built in 1948 by the Debtor, Melvin Winegarten, and his father, Andrew Winegarten, at which time title to both the subject property and the non-owned 16 acres was held by Andrew Winegarten and his wife, Allie Mae. The Debtor testified that when the home was built, it was the intent of the Debtor and his father that it be located entirely on the 16 acre tract, but through an error at the time of construction, the house partially straddles the property line.

Through a series of transactions between the Debtor and his family, the Debtor acquired title to the subject property in 1954.

4. Andrew and Allie Mae Winegarten have occupied the house located on the property since 1952 with the exception of a brief period in the 1970's. The Debtors have not occupied the home for sometime, having resided in the Tulsa area since 1957.

5. The Debtors have performed some work on the property, including beginning construction on the pole barn in the Fall of 1987, but which has not been worked on since the Spring of 1988; installing siding on the house located on the subject property in the Fall of 1987; putting a roof on the home in the Spring of 1988; and insulating the home in the Fall of 1986. All of this work was performed by the Debtor; however, the Debtor has not performed construction on the subject property or visited the premises on a regular basis.

6. The Debtors currently reside in Broken Arrow, Oklahoma, in a home owned entirely by their son who resides in an apartment in Tulsa. Recently, at sometime prior to the filing of bankruptcy but after the work was performed on the subject property, the Debtors expended some $15,-000.00 in the improvement of the Broken Arrow house owned by their son. None of this money was expended on the subject property.

7. Mr. Winegarten was employed from 1957 to 1988 by the International Brotherhood of Electrical Workers (IBEW), providing apprenticeship training to electrical workers for the industry. During this time, the office where the Debtor performed this work was located in Tulsa. His wife, Katherine Winegarten, was employed as an assistant to her husband until starting her own program in 1986. All of this work was likewise performed in Tulsa.

Mr. Winegarten is currently unemployed with no specific plans for employment in the area where the subject property is located, LeFlore County.

8. The Debtors claimed property located in Tulsa County (Bixby, Oklahoma) as homestead for ad valorem taxation purposes from sometime in the 1960's to 1987. In addition, the Debtors have listed the Broken Arrow property as the place of their residence on both their driver's licenses and for voter registration.

## CONCLUSIONS OF LAW

A. Since Oklahoma chose to opt out in the determination of exempt property, the determination of homestead exemption by this Court shall rest solely on reliance upon Okla.Stat. tit. 31, § 2 (West Supp.1989) and Oklahoma case law interpreting property and circumstances which constitute "homestead."

B. It is clear that there are two elements which must be satisfied before a particular property may be impressed with homestead character. First, "there must be a fixed intention to make a home on the property evidenced by overt acts of preparation in the erection of improvements and in the preparation of the land for a home;" and second, "the actual occupancy of the land, or an attempt in good faith to do so, must follow the overt act of preparation without unreasonable delay." *Enosburg Falls Savings Bank & Trust Company v. McKinney,* 172 Okl. 298, 44 P.2d 987 (1935).

The Debtors in the instant case have expressed an intention to consider the land and home located thereon as homestead and reside there permanently. However, "this intention should not only be in the minds of the party, but should be evidenced

**708**

by some unmistakable acts, showing the intention to carry out such a design." *Jefferson, et al. v. Henderson, et al.,* 140 Okl. 86, 282 P. 677 (1929). The past actions of the Debtors have not so indicated. The substantial monies expended for improvement of the son's home without any concurrent improvement of the land which the Debtors now seek to have deemed their homestead demonstrates a prior intent that the land be occupied by the Debtor's parents. All improvements which the Debtors claim to have made in the continued maintenance of the property illustrate to this Court the Debtor's willingness to keep the structures and land in a livable condition for his parents, who are not able to take care of the property, and not an intent to make the property ready for future occupation by the Debtors. The Debtors' outward representations "to the world" do not manifest their intent to claim the subject property as homestead prior to this bankruptcy.

C. Further, the Debtors have taken an inordinate and unreasonable amount of time in order to actually occupy the land, since ownership was acquired by the Debtor in 1954. All told and considering the totality of the circumstances, the Debtors have failed to demonstrate the appropriate indicia to satisfy the requirements under Oklahoma law to establish the subject property as homestead.

IT IS THEREFORE ORDERED that the Debtors' Motion to Avoid Lien pursuant to 11 U.S.C. § 522(f)(1) is hereby denied.

IT IS FURTHER ORDERED that the Trustee's Objection to Exemption is sustained.